**BERNIE ENTERPRISES**

v.

**HILLTOWN TOWNSHIP ZONING HEARING BOARD, Appellant.**

**BERNIE ENTERPRISES**

v.

**HILLTOWN TOWNSHIP ZONING HEARING BOARD,**

**Earl and Josi Smith, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Feb. 7, 1995.
Decided April 20, 1995.

John B. Rice, Solicitor, for appellant Hilltown Tp. Zoning Hearing Bd.

Francis X. Buschman, Jr., for appellants/intervenors Earl and Josi Smith.

John A. VanLuvanee, for appellee Bernie Enterprises.

Before COLINS, President Judge, FRIEDMAN, J., and KELTON, Senior Judge.

FRIEDMAN, Judge.

Hilltown Township (Township) appeals from an order of the Bucks County Court of Common Pleas (trial court) reversing the decision of the Hilltown Township Zoning Hearing Board (Zoning Board) and granting a variance by estoppel to Bernie Enterprises, Inc. (Bernie). We reverse the trial court's order and reinstate the decision of the Zoning Board.[1]

In 1959, the Township implemented its first zoning ordinance. At that time, Harry Moore owned a junkyard on 2.636 acres of property identified as Bucks County TMP number 15-6-15. The Township Zoning Ordinance zoned Moore's property as residential R-30 and prohibited junkyard use in that district; however, because Harry Moore's junkyard was lawfully in existence prior to the Township Zoning Ordinance's enactment, the junkyard became a valid *nonconforming* use on that parcel. *See* Section 600(a) of the Township Zoning Ordinance.[2]

On March 20, 1965, William Moore and Michael Kroker purchased Harry Moore's junkyard on parcel TMP number 15-6-15 along with two adjacent parcels of property identified as Bucks County TMP numbers 15-1-146-1 and 15-1-146-2, all of which totaled 22.6± acres. At the time they bought TMP numbers 15-1-146-1 and 15-1-146-2, no junkyard existed on either parcel. In 1970, William Moore and Michael Kroker applied for a variance to expand the junkyard use over a total of 18.5856 acres; however, that application was denied by the Zoning Board. Despite this denial, the area devoted to the junkyard use increased to 4.5 acres. In 1976, Joseph and Carl Rio bought all of the property and increased the operating size of the junkyard, without permission and in violation of the Zoning Ordinance, from 4.5 acres to 8.5 acres. In 1988, Bernie purchased the junkyard and entire acreage, including the 8.5 acre junkyard, from Joseph Rio's estate and Carl Rio (the Rios).

Prior to finalizing the purchase, Donald Metzger,[3] the sole owner of Bernie, signed an Agreement of Sale with the Rios, consulted a zoning attorney regarding the sale and obtained an Approval of Transfer of the property from the Township Board of Supervisors (Supervisors). This approval was granted on August 8, 1988 pursuant to Section 605 of the Zoning Ordinance, which requires a new owner of a property to gain approval of the Supervisors for transfer of the nonconforming use.[4]

---

1. Earl and Josi Smith, adjoining property owners, appeared at the various hearings as intervenors.

2. The nonconforming use doctrine recognizes a property owner's right to continue a use, such as the junkyard here, which was legal when established, even though that use does not conform to current zoning ordinance requirements. The Hilltown Township Zoning Ordinance reflects this doctrine in section 600(a), which defines "nonconforming use" as:

   a use, whether of land or of structure, which does not comply with the applicable use provisions in a zoning ordinance or amendment heretofore or hereafter enacted, *where such use was lawfully in existence prior to the enactment of such ordinance* or amendment or prior to the application of such ordinance or amendment to its location by reason of annexation.

   Section 600(a) of the Township Zoning Ordinance (emphasis added).

3. The parties and various documents in the record refer to Bernie Enterprises, Inc. and Donald Metzger interchangeably. However, we shall refer only to Bernie.

4. Section 605 of the Township Zoning Ordinance, dealing with "ownership," provides:

   It is the intent of this section to insure that the level of nonconformity is not increased when a conconforming [sic] use is transferred or sold. Whenever a lot, which is nonconforming by virtue of use, except agricultural land, or residential uses, is transferred or sold to a new owner, a previously nonconforming use may be continued by the new owner after review by the Board of Supervisors. The landowner shall prove that the level of nonconformity will not be increased or changed. Should the landowner propose any changes or alterations to the nonconforming use, the Supervisors may impose conditions regarding layout, circulation, and performance it deems necessary to insure that the change or alteration is in the best interest of the Township, the convenience of the community and the public welfare. The landowner may appeal such conditions to the Zoning Hearing Board subject to the provisions of Section 1004 of this Ordinance.

On October 11, 1991, Bernie received a Notice of Violation from the Township Zoning Officer. The Notice of Violation asserted that Bernie's nonconforming junkyard use had exceeded the expansion permitted under Section 603(c) of the Zoning Ordinance,[5] i.e., expanded onto the other parcels of land and that Bernie had to comply with the minimum front, side and rear yard requirements of Section 503 of the Zoning Ordinance,[6] fencing requirements for junkyard uses pursuant to Section 405(I)(10) of the Zoning Ordinance [7] and storage and waste disposal requirements under Section 515 of the Zoning Ordinance.[8] Bernie appealed to the Zoning Board, claiming that he was entitled to continue to use the land as Joseph and Carl Rio did and as approved by the Supervisors.[9] Bernie con-

5. Section 603(c) of the Township Zoning Ordinance permits a fifty percent expansion without approval from the Zoning Board. Accordingly, the Zoning Board found that:

> The original non-conforming use of 2.636 acres was expanded by the maximum amount (50%), said additional acreage being 1.318 acres, bringing the total area of the non-conformity to 3.954 acres (plus or minus). The maximum allowable area for the non-conforming Junkyard use is a total of 4 acres. (Zoning Board's op. at 4, 5.)

6. Section 503 *Minimum Yard and Maximum Height Requirements*

The following standards apply in the districts specified.

Minimum Yard and Maximum Height Requirements
(in feet)

|  | Minimum Lot Size | Front | Yards Side | Rear | Minimum Lot Width | Maximum Height |
|---|---|---|---|---|---|---|
| Planned Industrial | 2 ac. | 50 | 30 | 50 | 200 | 35 |
| Planned Commercial | 20,000 sf | 50 | 15 | 50 | 100 | 35 |
| Village Center Other Uses | 20,000 sf | 50 | 30 | 50 | 150 | 35 |

7. Although the parties refer to Section 405(I)(10) of the Township Zoning Ordinance, the original record indicates that the proper citation is Section 405(H)(H10)(c), which provides:

> Such junk yard shall be entirely enclosed by a solid fence or wall, at least eight feet high constructed of plank boards, brick, cinder block and concrete, with access only through solid gates. Such fence or wall shall be kept in good repair and neatly painted in a uniform color.

8. Section 515 of the Township Zoning Ordinance, entitled "Storage and Waste Disposal," provides:

> (a) No highly flammable or explosive liquids, solids, or gases shall be stored in bulk above ground, except tanks or drums of fuel installed in accordance with N.F.P.A. regulations connected directly with energy devices or heating appliances located and operated on the same lot as the tanks or drums of fuel. This provision shall not apply to Use G10 in the PI District.
>
> (b) All outdoor storage facilities for fuel, raw materials, and products, and all fuel, raw materials and products stored outdoors, shall be enclosed by an approved safety fence.
>
> (c) No materials or wastes shall be deposited upon a lot in such form or manner that they may be transported off the lot by natural causes or forces, not [sic] shall any substance which can contaminate a stream or watercourse or otherwise render such stream or watercourse undesirable as a source of water supply or recreation, or which will destroy aquatic life, be allowed to enter any stream or watercourse.
>
> (d) All materials or wastes which might cause fumes or dust, or which constitute a fire hazard, or which may be edible or otherwise attractive to rodents or insects, shall be stored outdoors only if enclosed in containers adequate to eliminate such hazards.
>
> (e) All outdoor storage facilities for fuel, raw materials, products, waste, or similar material, shall be shielded from view of the public highways and any residential or recreational use.

9. Specifically, Bernie argued:

> By reason of the fact that [Bernie] has acquired permission from the Board of Supervisors to use the property to the limits which existed as of August 8, 1988, the Zoning Officer abused his discretion and committed an error of law in concluding that a violation of the Hilltown Township Zoning Hearing Board decision of 1971 and of Section 603(c) of the Hilltown Township Zoning Ordinance exists. [Bernie] further contends that the prior approval by the Board of Supervisors and its reliance on that approval gives him a vested right to continue to operate the junkyard with whatever setbacks existed as of August 8, 1988; without fencing and without compliance with

ceded that on August 8, 1988, the nonconforming use had expanded beyond its original boundaries without official approval. Nevertheless, Bernie argued that it must be permitted to continue this expanded use because the Supervisors' Approval of Transfer on August 8, 1988 amounted to "active acquiescence" by the Township for continuation of the junkyard use as it existed on that date, thus creating a variance by estoppel or a vested right to continue to use the 8.5 acres as a junkyard.

■ Variance by estoppel and vested rights are related theories, with overlapping elements, developed to rectify inequities created by a property owner's good faith reliance on government action which resulted in expenditure of substantial unrecoverable funds by the property owner. *See generally* Robert S. Ryan, *Pennsylvania Zoning Law and Practice*, § 8.1.2 (1981). In order to establish a variance by estoppel, a property owner must establish, at a minimum:

1. the municipality's failure to enforce a law over a long period of time or some type of "active acquiescence" of the illegal use;

2. the property owner acted in good faith *and* relied innocently upon the validity of the use throughout the proceeding; and,

3. the property owner made substantial expenditures in reliance upon his belief that his use was a permitted use.

*Highland Park Community Club v. Zoning Board of Adjustment*, 509 Pa. 605, 506 A.2d 887 (1986); *Caporali v. Ward*, 89 Pa.Commonwealth Ct. 621, 493 A.2d 791 (1985). Other relevant factors include whether the denial of the variance would impose an un-

necessary hardship on the property owner and whether the use presents a threat to public health, safety or morals.[10] *Highland Park Community Club; In re Appeal of Crawford*, 110 Pa.Commonwealth Ct. 51, 531 A.2d 865 (1987), *appeal denied*, 518 Pa. 656, 544 A.2d 1343 (1988).

The Zoning Board concluded that Bernie satisfied the first element of a variance by estoppel; however, the Zoning Board, finding Metzger's testimony incredible, concluded that Bernie failed to prove the "good faith and innocent reliance" element. Accordingly, the Zoning Board upheld the Notice of Violation and directed Bernie to comply with the Zoning Ordinance, including the minimum yard, fencing and storage and waste disposal requirements.

Subsequently, Bernie appealed to the trial court, which disagreed that Bernie lacked good faith and reversed the Zoning Board's decision. The trial court held that Bernie was entitled to "a variance by estoppel to use the property in the same manner and to the same extent as it was used on August 8, 1988." (Trial ct. op. at 15.) By so holding, the trial court effectively held that Bernie did not have to comply with the minimum yard, fencing and storage and waste disposal requirements of the Zoning Ordinance.

The Township and Intervenors now appeal to this court and ask us to determine whether the trial court erred: (1) in reversing the Zoning Board's determination that Bernie had failed to establish the necessary elements of a variance by estoppel; and, (2) in reversing the Zoning Board's order that Bernie comply with the Yard, Fencing and Storage and Waste Disposal requirements of the Zoning Ordinance.[11]

---

Section 515 of the Zoning Ordinance, except to the extent that compliance existed as of August 8, 1988.
(Bernie Enterprises, Inc.'s Notice of Appeal at 3; R.R. at 51a.)

10. Bernie submits that it is entitled to continue its junkyard use either through a variance by estoppel or by the acquisition of a vested right. However, each theory includes a good faith and innocent reliance element, which Bernie lacks. As such, Bernie has failed to prove a right under either theory.

11. In addition to the good faith and innocent reliance issue, the Township argues that the trial court committed three other errors: (1) in finding that the Township failed to enforce its ordinance for a long period of time, knew of the violation and acquiesced in the illegal use; (2) in substituting its own judgment for that of the Zoning Board as to the element of unnecessary hardship; and (3) in finding that the junkyard use at its current level of intensity was not a threat to the health, safety or morals of the immediate neighborhood. However, due to our disposition of the good faith and innocent reli-

Although the Township and intervenors ask us to review the trial court's decision, we note that where, as here, the trial court does not accept additional evidence and reviews the appeal from the Zoning Board's order solely on the record as presented to the Zoning Board, the trial court's scope of review, as well as our own scope of review, is whether the Zoning Board abused its discretion or committed an error of law. *Valley View Civic Ass'n v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983); *Hudachek v. Zoning Hearing Board*, 147 Pa.Commonwealth Ct. 566, 608 A.2d 652 (1992). Such an abuse of discretion is present when the findings of the Zoning Board are *not* supported by "substantial evidence." *Valley View Civic Ass'n; Hudachek.* The term "substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Valley View Civic Ass'n; Hudachek.* Therefore, our focus is upon whether the evidence of record supports the Zoning Board's findings that Bernie did not act in good faith throughout the proceeding and did not innocently rely upon the validity of the use. *Kolesar v. Zoning Hearing Board of the Borough of Bell Acres*, 117 Pa.Commonwealth Ct. 299, 543 A.2d 246 (1988), *appeal denied*, 520 Pa. 620, 554 A.2d 512 (1989),

Upon a thorough review of the record, we believe that substantial evidence of record does exist to support the Zoning Board's finding that Bernie neither acted in good faith nor relied innocently upon the use. First and most importantly, the Zoning Board found Metzger's testimony as to his good faith and innocent reliance incredible and inconsistent, (Zoning Board's op. at 6, 14–22), as illustrated by the following findings of fact:

1. Metzger threatened the Rios with a law suit on an oral agreement regarding the property prior to August 1988, yet Metzger testified before the Zoning Board that he would not have purchased the property but for the Supervisors' actions. (R.R. at 125a, 140a.)

2. The Agreement of Sale between the Rios and Metzger, dated August 1, 1988, was contingent on a nonconforming use certificate for four and one-half acres of junkyard use, yet Metzger disavowed the significance of the four and one-half acre limitation before the Zoning Board. (R.R. at 119a, 125a–126a.)

3. The Agreement of Sale required Metzger to pay the cost for the installation of a fence around the subject property, yet Metzger testified before the Board that he would not have purchased the property if the Supervisors had required installation of a fence. (R.R. at 86a–87a.)

4. Metzger needed additional ground to store vehicles. (R.R. at 136a–137a.)

5. Metzger was a sophisticated and experienced property owner and had been involved in other litigation regarding junkyard zoning uses. (R.R. at 103a–113a, 117a–118a.)

These findings are well supported in the record. In fact, the record indicates that Bernie was aware of, at least, a 4.5 acre use restriction. That fact is evidenced by both the Agreement of Sale between Bernie and the Rios, which states that the property was zoned "R R Rural Residential with a *non conforming use for 4.5± acres* for a salvage yard and auto parts store", (R.R. at 21a) (emphasis added), and the addendum to the Agreement of Sale, which states: "This Agreement is conditioned and contingent upon [Metzger] obtaining a *Non–Conforming Use* and Occupancy Certificate for approximately *four and one-half (4½) acres* of the premises from Hilltown Township authorizing and permitting the use of that portion of the premises as a salvage yard and auto parts store for Bernie Enterprises, Inc...." (R.R. at 22a.) (Emphasis added.) Moreover, Bernie knew that Joseph and Carl Rio began operating the salvage yard with 4.5 acres, that 4.5 acres would not be enough for its purposes and that it needed 8.5 acres to operate.[12] (R.R. at 79a, 144a.) Nonetheless,

---

ance issue, we need not address these other alleged errors.

12. Although the Zoning Board found Metzger to not be a credible witness, the Zoning Board is free to reject, in whole or *in part*, the testimony

Bernie's owner, Metzger, an individual knowledgeable in zoning matters and, especially, matters relating to junkyards, (R.R. at 103a–113a, 117a, 118a), never asked if the Rios had approval to expand beyond that 4.5 acres, (R.R. at 144a).[13]

This evidence of record is sufficient to support the Zoning Board's determination that Bernie knew that the Rios' had expanded the nonconforming use into the adjoining lots illegally and, thus, Bernie did not act in good faith or innocent reliance on the use throughout the proceeding.

The Zoning Board also held that Bernie possessed a duty to comply with the Zoning Ordinance's current front, rear and side yard, fencing, storage and waste disposal requirements. However, the trial court, by concluding that Bernie was entitled "to use the subject property in the same manner and to the same extent as it was used on August 8, 1988," (Trial ct. op. at 15), effectively excused Bernie from complying with the dimensional and aesthetic requirements of the Zoning Ordinance. This would have been correct had the entire 8.5 acre junkyard been a legal nonconforming use, but it was not.

■ Bernie argues that when the Supervisors approved the *illegal* nonconforming use, the Supervisors knew or should have known that the property was not in compliance with front, side and rear yard, fencing, storage and waste disposal requirements of the Zoning Ordinance. Bernie points to the fact that Township records indicate that in the Summer of 1988, a Zoning Inspector conducted a site inspection of the property and issued a report which "impliedly" recognized the existence of the nonconformities. Bernie maintains that such an inspection would certainly have revealed any ordinance violations. Thus, Bernie reasons that when the Supervisors approved the nonconforming use, they approved the use as it existed, including all use, lot and structural nonconformities and yard, fencing, storage, and waste disposal nonconformities. This argument fails, however, because pursuant to section 605 of the Township Zoning Ordinance, unless changes are specifically proposed and considered, all that the Supervisors could approve was the *legal* nonconforming use of the original 2.636 acres; i.e., the use that existed when the zoning ordinance was enacted in 1959.[14]

Accordingly, we reverse the trial court's order and affirm the decision of the Zoning Board.[15]

### ORDER

AND NOW, this 20th day of April, 1995, the order of the Bucks County Court of Common Pleas, at No. 92–7483–13–5, dated November 17, 1993, is hereby REVERSED. The decision of the Hilltown Township Zoning Hearing Board, dated July 15, 1992, is hereby reinstated.

of any witness. *Graham v. Zoning Hearing Board of Upper Allen Township,* 99 Pa.Commonwealth Ct. 585, 514 A.2d 236 (1986).

**13.** Additionally, prior to purchasing the property, Bernie was bound to check the zoning status of the property and confirm the authorization, or lack thereof, for the entire auto salvage use which it was contemplating purchasing. *Crawford; Hasage v. Philadelphia Zoning Board of Adjustment,* 415 Pa. 31, 202 A.2d 61 (1964); *Center City Residents' Ass'n v. Zoning Board of Adjustment of the City of Philadelphia,* 144 Pa.Commonwealth Ct. 545, 601 A.2d 1328 (1992). Moreover, Carl Rio testified that he did not remember any conversation with Bernie stating that Bernie would not purchase the property unless it had approximately 8 acres of operating room. (R.R. at 145a–146a.)

**14.** The Zoning Board stated that:

The Board accepts the Zoning Officer's decision that the expansion from 2.636 acres to 4 acres is valid, even though there was no examination of this expansion by a Township body, because the 1959 Zoning Ordinance did not seem to impose any such requirement. However, although the original use existing in 1959, as well as the expansion of that use to 4 acres, is protected because of their non-conforming status, this does not also mean that the Township cannot regulate these Non–Conforming Uses.

(Zoning Board op. at 23, 24.)

**15.** Intervenors argue that they were not given the opportunity to properly challenge the August 8, 1988 action of the Supervisors. This issue however has become moot because we have determined that a variance by estoppel did *not* result from that action.